IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL EDUCATION FINANCIAL SERVICES, INC., et al., | : : : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : : | |
| U.S. BANK, NATIONAL ASSOCIATION, | : : : | NO. 12-6651 |
| Defendant. | : | |

**MEMORANDUM**

**Restrepo, J.**                                                                                           **November 27, 2013**

On November 28, 2012, Plaintiffs National Education Financial Services, Inc. and National Education Services, LLC (collectively "National Education") filed suit against U.S. Bank, National Association ("U.S. Bank"), bringing contract, quasi-contract and tort claims. Plaintiffs filed an amended complaint on February 25, 2013, to which Defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is granted, in part, and Plaintiffs are granted leave to amend consistent with this memorandum.

**I. FACTS AND PROCEDURAL HISTORY**

    **a. The Formation of a Contract**

The facts, as alleged in the Amended Complaint, are as follows: Plaintiffs are "established marketer[s], originator[s] and servicer[s] of federal and private student loans both for many student lending institutions and on [their] own account." Am. Compl. ¶ 7. Plaintiffs market these "education loans by working closely with college and university financial aid offices." *Id.* ¶ 8. In or around December of 2010, Defendant contacted Plaintiffs and expressed interest "in contracting National Education to market U.S. Bank's student loan product." *Id.* ¶ 12.

In essence, Plaintiffs, using their expertise and contacts, "would market the U.S. Bank student loan product to hundreds of schools and incalculable numbers of students." *Id*. ¶ 13.

On or about February 18, 2011, the parties entered into a "marketing agreement" ("the Agreement"), which is the basis for the dispute here. *Id.* ¶ 15. The Agreement was derived from a template provided by Plaintiffs, but substantially edited by Defendant. *Id.* ¶ 16. Defendant was represented by counsel, while Plaintiffs, two related corporations with more than fifty employees, Oral Arg. Tr. 4:5-7, were not represented, Am. Compl. ¶ 16.

### b. Relevant Terms of the Contract at Issue

Important terms of the Agreement, Doc. No. 9 at 24-39, include:

- Section 2.1: "Obligations of U.S. Bank." Section 2.1 provides that Defendant agrees to (a) cooperate with Plaintiffs in the marketing of student loans; (b) let Plaintiffs use Defendant's marks; (c)-(d) provide timely responses to Plaintiffs; (e) monitor the business that comes from Plaintiffs' work under the contract so that Plaintiffs are adequately compensated; and, (f) provide a unique code that would allow Plaintiffs to list co-branded student loans on industry lender lists. *Id.* at 26-27.

- Section 2.6: "Reputation." Section 2.6 provides that each party acknowledges the importance of good will and the good reputation of the other parties in the education loan environment, and thus agrees to "take no action . . . that reasonably may be anticipated to reflect badly on any of the other Parties." *Id.* at 28.

- Section 5: "Termination." Section 5 provides detail about the termination process. Section 5.1 provides that the Agreement shall last for two years, "unless otherwise terminated earlier in accordance with Section 5.2 or Section 5.3." Section 5.2 ("General Termination") provides that "any Party may terminate this Agreement for convenience upon 60 days written notice to the other Parties." *Id.* at 30-31.

- Section 11.1: "Governing Law." Section 11.1 selects Delaware law as governing the terms of the contract. *Id.* at 36.

- Section 11.8: "Entire Agreement and Waiver." Section 11.8 is a full integration clause. *Id.* at 38.

### c. The Performance and Termination of the Contract

The Amended Complaint further alleges that after executing the Agreement, Plaintiffs shifted approximately eighty-five percent of their resources to promoting and marketing Defendant's loan products. *Id.* ¶ 20. In doing so, Plaintiffs moved their business away from other national lending institutions and turned down opportunities for new business. *Id.*

Further, the market for student loans is a highly competitive one, centering around a 75-day "window of opportunity," where schools decide what lenders may market their products to their students. *Id.* ¶ 22. This time period is resource intensive, and requires a full-time commitment of resources from businesses like Plaintiffs. *Id.*

Despite the Agreement being signed late in the year, the first year was successful for Plaintiffs, who procured approximately four million dollars in disbursement volume for Defendant. *Id.* ¶ 28. During year two of the Agreement, Plaintiffs continued their work for Defendant, including during the intensive "window of opportunity." *Id.* Plaintiffs did so with the active encouragement of Defendant, including on March 8 and March 26, 2012. *Id.* ¶ 30. However, on March 27, 2012, Defendant directly notified educational institutions that it was immediately ending its student-loan line of business, including the very student-loan products that Plaintiffs were actively marketing. *Id*. ¶ 32. Two days later, on March 29, 2012, Defendant notified Plaintiffs of its decision to leave the market and terminate the Agreement. *Id.* ¶ 33. Because Plaintiffs were deep into the so-called "window of opportunity," they were unable to mitigate their damages, and thus were significantly harmed by this abrupt exit. *Id.* ¶ 34.

### d. Procedural History

Plaintiffs filed this suit on November 28, 2012 and filed an Amended Complaint on February 25, 2013. The Amended Complaint contains nine counts: negligent misrepresentation,

intentional misrepresentation, fraud in the inducement, fraud in the execution, violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law,[1] breach of implied-in-fact contract, promissory estoppel, breach of implied-at-law contract, and breach of contract.

On March 14, 2013, Defendant filed a motion to dismiss the Amended Complaint, in part. The Court heard argument on September 19, 2013, and received supplemental briefing from the parties shortly thereafter.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not, however, credit "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Id.* at 555. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the

---

[1] Plaintiffs voluntarily withdrew this count of the Amended Complaint at argument.

4

elements will not suffice. *Id.; see also Phillips*, 515 F.3d at 231. Finally, when, as here, a complaint contains attachments, examination of the attachments is proper when considering a motion to dismiss. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

### a. Intentional Misrepresentation, Fraud in the Inducement and Negligent Misrepresentation

Defendant seeks dismissal of Plaintiffs' Intentional Misrepresentation, Fraud in the Inducement and Negligent Misrepresentation claims.

> "Under Pennsylvania law . . . a fraudulent misrepresentation[2] is established by presenting clear and convincing evidence of (1) a misrepresentation of a material fact; (2) a fraudulent utterance thereof by the defendant; (3) an intention that the other person would thereby be induced to act, or to refrain from acting; (4) justifiable reliance by the recipient; and (5) damage to the recipient caused by this reliance."

*In re Cara Corp.*, 148 B.R. 760, 771 (Bankr. E.D. Pa. 1992). Fraud in the inducement, to the extent it is a separate cause of action from intentional misrepresentation, has a virtually identical standard. *See Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.*, 700 F. Supp. 2d 720, 727 (W.D. Pa. 2010). Further, the only distinguishing characteristics between intentional and negligent misrepresentations are a) the state of mind of the actor and b) the duty commonly assumed in negligence actions. *See Weisblatt v. Minnesota Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 380 (E.D. Pa. 1998).

Plaintiffs argue that there were two interrelated mispresentations. First, that Defendant induced Plaintiffs to believe that Defendant was guaranteeing that it would actually make loans to qualified borrowers, when in fact the Agreement only commits Defendant to "cooperate" with

---

[2] Courts interchangeably use the terms intentional misrepresentation and fraud. *See McElwee Grp., LLC v. Mun. Auth. of Borough of Elverson*, 476 F. Supp. 2d 472, 477 (E.D. Pa. 2007); *Benevento v. Life USA Holding, Inc.*, 61 F. Supp. 2d 407, 416 (E.D. Pa. 1999); *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994).

Plaintiffs. Am. Compl ¶¶ 38-39, 46-47, 56-59. And second, that Defendant knew or should have known that it was not intending to make loans for two years, and hid this fact in negotiating the termination-for-convenience clause. Plaintiffs ask that this Court to allow them to conduct discovery so that they may find extrinsic evidence to demonstrate that such a fraud (or negligent misrepresentation) occurred. Defendant objects and argues that the Agreement is clear, and as such, that the parol evidence rule bars Plaintiffs' attempted use of extrinsic evidence of these alleged misrepresentations.

### i. The Clarity of the Contract and the Parol Evidence Rule

In Delaware, "a valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010). Pennsylvania has a virtually identical standard.[3] *See Fish Net, Inc. v. ProfitCenter Software, Inc.*, No. 09-5466, 2013 WL 5635992, at *3 (E.D. Pa. Oct. 15, 2013) ("In Pennsylvania, an enforceable contract exists when the parties to the contract: (1) reach a mutual understanding; (2) exchange consideration; and (3) delineate the terms of their bargain with sufficient clarity."). Further, "[t]he cardinal rule of contract construction is that, where possible, a court should give effect to *all* contract provisions." *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1184 (Del. 1992) (Delaware law); *see also Sungard Recovery Servs., Inc. v. Florists Transworld Delivery, Inc.*, No. 98-4815, 1999 WL 1045147, at *1 (E.D. Pa. Nov. 17, 1999) ("Pennsylvania law requires that a court, when interpreting a contract, determine the parties' intent and give effect all of the contract's provisions.").

---

[3] In their respective briefs, the parties agreed that the Agreement is governed by Delaware law, while non-contract causes of action should be governed according to Pennsylvania law. While the parties do not address the state law that controls whether there was contract formation itself, the distinction is unimportant, as the standard of law for each state is similar and the Agreement meets either state's requirements.

In this case there was clearly a mutual understanding to be bound for consideration. Not only is there a signed contract, but by all accounts the parties performed according to it for a year, before the events leading to its termination and the instant dispute. Am. Compl. ¶ 28. That contract was freely negotiated by the parties, Tr. 4:8-14, and it is the violation of that contract that led Plaintiffs to file their suit.

Where, as here, prior misrepresentations are alleged, "the parol evidence rule bars [evidence of] such representations where [a] written agreement: (1) contains terms which directly deal with the subject matter of the alleged oral representation; and (2) represents the entire contract between the parties, particularly where the written agreement also contains an integration clause." *Atlantic Pier Assocs., LLC v. Boardakan Rest. Partners,* 647 F. Supp. 2d 474, 489 (E.D. Pa. 2009). Further,

> [w]hen interpreting agreements containing clear and unambiguous terms, [Pennsylvania Courts] need only examine the writing itself to give effect to the parties' intent. The language of a contract is unambiguous if [courts] can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends.

*Profit Wize Mktg v. Wiest*, 812 A.2d 1270, 1274 (Pa. Super. 2002) (internal quotations and citations omitted).

The rule is not absolute. "[W]here the language of a contract is ambiguous and two logical interpretations of the provision are offered, the ambiguous provision is construed against the drafting party," and extrinsic evidence may be examined by the trier of fact. *Stinebeck v. Cutrona*, No. 06-01883, 2008 WL 859240, at *12 (E.D. Pa. Mar. 28, 2008). Accordingly, much of Plaintiffs' case turns on asking this Court to determine that the language regarding Defendant's "obligations" under the Agreement or Defendant's ability to terminate the Agreement is sufficiently ambiguous such that this Court should ignore the integration clause

7

and allow extrinsic evidence to determine the parties' true understanding of the contract. *See Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1010 n.9 (3d Cir. 1980) ("If the written contract is ambiguous the Parol Evidence Rule does not prevent the use of extrinsic evidence to interpret the writing.").

### ii. Alleged Misrepresentations Regarding Defendant's Agreement to Make Loans

Plaintiffs allege that Defendant fraudulently induced them to enter into an Agreement whereby Defendant only agreed to "cooperate" with Defendant, rather than affirmatively commit to make loans to the qualified borrowers that Plaintiffs found. Upon examination, the Court finds the Agreement to specifically contemplate the obligations of the parties generally and Defendant specifically. *See* Doc. No. 9 at 26. Specifically, the Agreement states that Defendant is obligated to cooperate with Plaintiffs and to do so at the exclusion of any similar relationships with student loan marketers. *Id.* Further, the Agreement does not guarantee Defendant will make loans, reserves the right of Defendant to market loans on its own behalf, and has no benchmarks of any particular loan volume that Defendant promised Plaintiffs. *Id.* at 26-28.

Accordingly, with clear terms regarding Defendant's obligations and an integration clause, the parol evidence rule bars evidence of prior representations with regards to any other of Defendant's responsibilities under the Agreement.[4] *Atlantic Pier Assocs.,* 647 F. Supp. 2d at 489-90.

---

[4] While only raised by implication by Defendant, the Court notes that the gist of the action doctrine also appears to squarely bar these causes of action, each of which derives explicitly from the terms of the contract. *See, e.g., CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 377 (E.D. Pa. 2009) ("The doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.").

Moreover, even if the Court allowed extrinsic evidence to be heard, the Amended Complaint's implied addition to the Agreement—the term that would have been in the Agreement were it not for misrepresentations of Defendant—does not bridge the gaps in the failure of these causes of action. This can be seen by actually adding the term that the Amended Complaint states was omitted:

> The representation that U.S. Bank would actually provide student loans was omitted from the "Agreement." All communications, resources, processes, procedures and payment were unequivocally premised upon National Education's understanding that U.S. Bank would provide the student loan product being marketed by National Education.

Am. Compl. ¶ 47. In other words, Plaintiffs want to add a term to section 2.1 ("Obligations of U.S. Bank") that explicitly obliges Defendant to make loans marketed by Plaintiffs.

However, even assuming that this term was implied, *arguendo*, Plaintiffs still not have alleged anything actionable against Defendant, because there are no allegations that Defendant did not actually make loans to qualified borrowers while the Agreement was in effect. Even according to Plaintiffs, before Defendant terminated the Agreement, Defendant was actually providing loans to qualified borrowers. *Id.* ¶ 28. In other words, nothing in the Amended Complaint actually suggests that Defendant's supposed promise to make loans to qualified borrowers was a misrepresentation. Defendant made loans while the Agreement was in place; it is the exit from that Agreement over which Plaintiffs quarrel.

---

In similar situations, courts have dismissed similar claims based on the closely related economic loss doctrine. *Dunkin' Donuts Franchised Rests., LLC v. Claudia I, LLC*, No. 12-2010, 2013 WL 3716525, at *7 (E.D. Pa. July 15, 2013) ("In contract actions, the economic loss doctrine prohibits claims of intentional fraud when economic losses are incurred from breach of contractual obligations."); *Duquesne Light Co.*, 66 F.3d at 620 (in contract between two sophisticated business entities "no reason in principle to carve out an exception to [economic loss doctrine] when the negligence consists of misrepresentation"); *Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.*, 700 F. Supp. 2d 720, 733-34 (W.D. Pa. 2010).

With no misrepresentation, there can be no fraud. Accordingly, with or without the application of the parol evidence rule, the Amended Complaint does not sufficiently plead intentional or negligent misrepresentation with respect to Defendant's obligation to make loans to qualified borrowers.

### iii. Alleged Misrepresentations Regarding Defendant's Ability to Exit from the Agreement for Convenience

The parol evidence rule similarly bars evidence with regards to a fraud claim about Defendant's right to exit the contract. *Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Invs.*, 951 F.2d 1399, 1407 (3d Cir. 1991) ("[U]nder Pennsylvania law, a written contract which gives one party an unconditional right precludes the other party from using parol evidence to establish a condition on the exercise of the unlimited right the written text contains."). The Agreement clearly and in plain language states that the parties are entering into a two-year contract that either party may terminate with sixty days of notice to the other party, "for convenience." Doc. No. 9 at 31. Yet, according to Plaintiffs' desired interpretation, section 5.1, which states that that the Agreement "shall continue in full force and effect for two (2) years," actually means that the contract was two, separate one-year contracts.[5] Further, what the Agreement really would have said, were it not for fraud or mistake, is that during each year, once Plaintiffs began their marketing efforts for the loan product, section 5.2 (the termination for convenience clause) was no longer valid for the rest of that year. In effect, Plaintiffs ask this Court to ignore the clear language of section 5.1 and 5.2, while significantly re-drafting each of them and making them significantly more complicated.

---

[5] At argument, Plaintiffs' counsel elaborated on this argument. *See* Tr. 10:2-6 ("So, then you have the end of year one and the cycle starts again. Your Honor, this contract is only divisible by two. You can't terminate this agreement at this dashed line. It is inherently unfair, and that's what U.S. Bank did.").

At argument, the Court asked Plaintiffs how section 5.2 could be considered ambiguous. Plaintiffs' response was noteworthy:

> The Court: What is ambiguous about [section] 5.2?
>
> Plaintiffs' Counsel: Well, Your Honor, again, one of things we're discussing here and one of the things we've brought up is misrepresentation. . . . We've got written documentation of certain things. We've got emails. We've got them intentionally misleading National Education to continue up until the night before they noticed all of the students.

Tr. 12:7-13:13. In other words, Plaintiffs do not argue that section 5.2 is actually ambiguous. Instead, they simply argue fraud, a circular shortcut that, if extended by the Court, would allow every clear business contract term to be prone to claims of fraud, no matter how unequivocal those terms are. In fact, the Court finds the Agreement to be unambiguous and clearly written between two sophisticated parties who bargained for the ability to terminate the Agreement at their convenience, without cause. Such terms are not unheard of or illegal in Pennsylvania, *see Mountbatten Surety Co., Inc. v. AFNY, Inc.*, No. 99-2687, 2000 WL 375259, at *3 (E.D. Pa. Apr. 11, 2000), or in Delaware, *see Donald M. Durkin Contracting, Inc. v. City of Newark*, No. 04-163, 2007 WL 2710451, at *5 (D. Del. Sept. 17, 2007).

In sum, the Agreement is a fully integrated, unambiguous contract between sophisticated corporate parties that squarely covers Defendant's obligations and the method of termination of the Agreement. Further, the parol evidence rule bars evidence of the alleged prior representations that Plaintiffs seek to use to render to the Agreement ambiguous or to demonstrate any misrepresentations. As such, Plaintiffs have not plausibly pleaded the elements of fraudulent misrepresentation, negligent misrepresentation or fraud in the inducement, and these counts will be dismissed. *See, e.g, Armstrong World Indus., Inc. v. Robert Levin Carpet Co.*, No 98-5884,

1999 WL 387329, at *6 (E.D. Pa. May 20, 1999) (dismissing fraud claims regarding a party's early termination from a clearly written contract).

### iv. Plaintiffs' Lack of Representation During Contract Negotiations

At argument, Plaintiffs gave one additional reason—Plaintiffs' lack of representation during contract negotiations—for why this Court should decline to dismiss the misrepresentation claims. Because it underlies much of their argument, the Court asked Plaintiffs, by way of supplemental briefing, to provide this Court with case law which would support their position that unrepresented corporations, which admittedly could afford counsel, should be considered akin to an unrepresented consumer and given some sort of benefit of the doubt for these claims.

In their responsive submission, Plaintiffs cited only a single case, *Metalized Ceramics for Electronics, Inc. v. National Ammonia Co.*, 663 A.2d 762, 767 (Pa. Super. 1995), for this proposition. *Metalized Ceramics* does not, in fact, support Plaintiffs' position. In *Metalized Ceramics*, the Pennsylvania Superior Court affirmed a finding that a contract between two "experienced business entities" was not unconscionable, because the parties not only were experienced, but had meaningful choice at their disposal. *Id.* at 765-767.[6]

As is logical, courts have noted that concerns with unequal bargaining power in a transaction with an unrepresented consumer are not present in transactions between two sophisticated business entities, particularly if those entities have meaningful choice. *See, e.g., Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 620 (3d Cir. 1995) ("if the parties to the contract were sophisticated business entities engaging in an arms-length transaction, ordinary contract principles would govern their relationship"); *Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 203-04 (3d Cir. 1995) ("limitation of liability clauses are not disfavored under

---

[6] Plaintiffs did not plead unconscionability in the Amended Complaint.

Pennsylvania law; especially when contained in contracts between informed business entities dealing at arm's length"); *Vasilis v. Bell of Pa.*, 598 A.2d 52, 54 (Pa. Super. 1991) (holding that in Pennsylvania, "the doctrine of unconscionability, developed to provide relief to customers who lack sophistication and business acumen, is inapplicable" between two corporations with meaningful choice).

Per Plaintiffs' Counsel's own words, Plaintiffs are sophisticated;[7] originated millions of dollars worth of loans per year;[8] were in this line of business for more than twenty years;[9] could have hired counsel[10] but opted not to;[11] provided a starting template for what eventually became the contract between the parties;[12] and, generally provided zero indication that they lacked meaningful choices when they negotiated the Agreement. Thus, Plaintiffs were far from vulnerable consumers presented with a confusing adhesion contract and Plaintiffs' submission fails to indicate how this Court's analysis of the Amended Complaint should be influenced by their lack of counsel.

### b. Quasi-Contract

Plaintiffs bring three quasi-contract claims: contract-in-law (otherwise known as unjust enrichment), contract-in-fact, and promissory estoppel. When, as here, there is a valid contract, quasi-contract claims such as these cannot survive.

---

[7] "[A]nd remember, [Defendant] has decades of experience in [the student loan business], and so does [Plaintiff]." Tr. 8:22-24.

[8] Am. Compl. ¶ 28.

[9] Tr. 4:2-3.

[10] Tr. 5:18-20.

[11] Tr. 35:17-21.

[12] Tr. 36:12-37:1.

"Promissory estoppel applies to enforce a promise that is not supported by consideration, in other words, when there is no binding contract. Thus, promissory estoppel has no application when parties have entered into an enforceable agreement." *Synesiou v. DesignToMarket, Inc.*, No. 01-5358, 2002 WL 501494, at *4-5 (E.D. Pa. Apr. 3, 2002) (citing *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990). Similarly, quasi-contract actions brought under the theory of unjust enrichment are "inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d. Cir. 1987). Finally, "no implied-in-fact contract can be found when, as here, the parties have an express agreement dealing with the same subject." *In re Penn Cent. Transp. Co.*, 831 F.2d 1221, 1229 (3d Cir. 1987).

As stated above, there was a legitimate contract under which the parties performed for approximately a year. Accordingly, these quasi-contract claims will be dismissed.

### c. Fraud in the Execution

Fraud in the execution occurs when a party is deceived into signing a contract with different terms than it otherwise believed it was signing. *O'Kinsky v. Perone*, No. 10-6075, 2012 WL 1392367, at *3 (E.D. Pa. Apr. 20, 2012). While fraud in the inducement "induces a party to assent to something he otherwise would not have; [fraud in the execution] induces a party to believe the nature of his act is something entirely different than it actually is." *Connors v. Fawn Min. Corp.*, 30 F.3d 483, 490 (3d Cir. 1994) (citations omitted). In simple terms, fraud in the execution occurs when deception causes a document to say something different than a party believes it to say. Accordingly, to prove fraud in the execution, a plaintiff must allege that the parties agreed that certain terms would be included in the written contract, and that the terms

14

were omitted by fraud, accident or mistake. *1726 Cherry St. P'ship v. Bell Atl. Props., Inc.*, 653 A.2d 663, 666 (Pa. Super. 1995).

Here, Plaintiffs do not actually allege that any term was fraudulently omitted. Instead, this appears to be a re-hashing of the fraud in the inducement claim. For example, at argument, when asked about fraud in the execution, Plaintiffs circled back to the unfairness of the termination clause, and their belief that it could be *interpreted* differently, not that terms were fraudulently omitted:

> the fraud in the execution . . . goes back to the clause we were just speaking of, the termination clause. We set forth, with facts, that there was the two-year provision. **The way [Plaintiffs] interpreted that**, is there is two years. **He didn't understand that that could be interpreted, okay it could be** – but in his mind, because this is all he does for a living, there are two [individual] years."

Tr. 18:16-19:3.

In sum, Plaintiffs do not allege a term was omitted from the document. They instead allege that they interpreted something differently than Defendant, and that they were induced based on certain representations and a difference in their understanding of what the contract terms met. This is not a proper claim for fraud in the execution. Accordingly, this claim will also be dismissed.

### d. Contract Claims

In the Amended Complaint, Plaintiffs also allege many different breach-of-contract claims by Defendant:

(a) failing to provide the contractually required sixty (60) days notice of termination;

(b) acting in a manner that it should have reasonably expected to reflect badly upon Plaintiffs;

(c) failing to refrain from acting in a manner that it should have reasonably expected to reflect badly upon Plaintiffs;

15

(d) acting in a manner that it should have reasonably expected to damage Plaintiffs' goodwill;

(e) failing to refrain from acting in a manner that it should have reasonably expected to damage Plaintiffs' goodwill;

(f) acting in a manner that it should have reasonably expected to harm Plaintiffs' reputation;

(g) failing to refrain from taking action that it should have reasonably expected to harm Plaintiffs' reputation;

(h) failing to take reasonable measures to protect Plaintiffs' reputation;

(i) circumventing Plaintiffs to directly provide Plaintiffs' client schools with informal and unexpected email correspondence announcing Defendant's sudden departure from the student lending industry;

(j) failing to allow Plaintiffs an opportunity to mitigate its damages;

(k) failing to provide student loans to qualified borrowers;

(l) failing to abide by applicable law with respect to good faith and fair dealing in contracts; and/or

(m) failing to meet Defendant's obligation to give Plaintiffs the right, power, and/or authority to fully perform its obligations pursuant to the Agreement.

Defendant seeks to dismiss counts IX(b) through IX(m).

### i. The Amended Complaint Plausibly Establishes a Violation of the Reputation Clause of the Contract

For a breach of contract claim, Delaware law requires the "pleading of the existence of a contract, a breach thereof, and a demand for relief." *Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp. 2d 726, 738 (D. Del. 2002). Read in a light most favorable to Plaintiffs, counts (b), (c), (d), (e), (f), (g), (h) and (i) state a plausible claim: that Defendants violated the reputation clause of the Agreement, which states that "each party acknowledges the importance of good will and good reputation of the other Parties" and thus will take no action or inaction that may

harm the reputation of the other party. Doc. No. 9 at 28. Defendant's actions, if proven true, plausibly have harmed Plaintiffs' reputation, and thus plausibly violated this clause of the Agreement.

Thus, to the extent Plaintiffs are alleging that Defendant's actions violated this clause, Defendant's motion to dismiss will be denied.

### ii. The Amended Complaint Fails to Establishes a Violation of the Implied Covenant of Good Faith and Fair Dealing

Defendant seeks to dismiss count IX(l), the breach of the implied covenant of good faith and fair dealing. "Under Delaware law, an implied covenant of good faith and fair dealing inheres in every contract." *Winshall v. Viacom Intern., Inc.*, 55 A.3d 629, 636 (Del. Ch. 2011).[13] Accordingly,

> a party to a contract has made an implied covenant to interpret and to act reasonably upon contractual language that is on its face reasonable. This implied covenant is a judicial convention designed to protect the spirit of an agreement when, without violating an express term of the agreement, one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain. It requires the Court to extrapolate the spirit of the agreement from its express terms and based on that "spirit," determine the terms that the parties would have bargained for to govern the dispute had they foreseen the circumstances under which their dispute arose. The Court then implies the extrapolated term into the express agreement as an implied covenant and treats its breach as a breach of the contract. The implied covenant cannot contravene the parties' express agreement and cannot be used to forge a new agreement beyond the scope of the written contract. Despite these restrictions, Delaware courts apply this legal theory only in narrow circumstances.

*Chamison v. Healthtrust, Inc.*, 735 A.2d 912, 920–921 (Del. Ch. 1999), *quoted in Keating v. Applus+Technologies, Inc.*, 2009 WL 261091, at *3 (E.D. Pa. 2009). Further, "[g]ood faith

---

[13] Delaware law, as controlling the contract claims, also controls the good faith and fair dealing analysis. *See TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 836 F. Supp. 2d 274, 280 (E.D. Pa. 2011) (After selection clause uses Massachusetts for breach-of-contract claim, "Massachusetts law similarly governs [a plaintiff's] claim for breach of the implied covenant of good faith and fair dealing, since the claim alleges a breach of duty implied in the agreement."); *Torain v. Clear Channel Broad.*, Inc., 651 F. Supp. 2d 125, 138 (S.D.N.Y. 2009).

does not envision loyalty to the contractual counterparty, but rather faithfulness to the scope, purpose, and terms of the parties' contract. Both necessarily turn on the contract itself and what the parties would have agreed upon had the issue arisen when they were bargaining originally." *Gerber v. Enter. Prods. Holdings, LLC*, 67 A.3d 400, 418-19 (Del. 2013).

For Plaintiffs to meet their pleading burden, they must "allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581-82 (D. Del. 2007). "General allegations of bad faith conduct are not sufficient to state a claim for breach of the implied covenant of good faith and fair dealing." *Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*, No. 7092-VCP, 2012 WL 6632681, at *16 (Del. Ch. Dec. 20, 2012).

Upon review, the Amended Complaint does not adequately allege a breach of the implied duty. Instead, it simply recites one sentence, that Defendant "fail[ed] to abide by applicable law with respect to good faith and fair dealing in contracts." Am. Compl. ¶ 100(m). However, it does appear that that Plaintiffs may, with a sufficiently clear complaint, be able to plausibly establish such a breach. Accordingly, the Court will dismiss this count, but grant leave for Plaintiffs to file a Second Amended Complaint that identifies with more specificity how Defendant breached this covenant, in such a manner that does not breach the parties' express agreement. *See Chamison*, 735 A.2d at 921.

### iii. Count IX(j), IX(k) and IX(m) Must be Dismissed for Failing to State a Claim

Defendant seeks to dismiss counts IX(j) ("failing to meet its obligation to have the right, power, and/or authority to fully perform its obligations pursuant to the Agreement"), IX(k) ("failing to provide student loans to qualified borrowers") and IX(n) ("failing to allow National Education an opportunity to mitigate its damages"). Among other things, Defendant

argues that the Amended Complaint is alleging violations of terms of the Agreement that do not appear to exist.

In their response to Defendant's motion, Plaintiffs do not address Count IX(j), and do not specify which part of the contract was actually violated by this action. *See In re Am. Bus. Fin. Servs., Inc.*, 361 B.R. 747, 760 (Bankr. D. Del. 2007) (dismissing contract action that "failed to allege what specific contractual provisions have been breached"). Instead, the count appears to be a general restatement of allegations of contract violations. Hence, the Court will dismiss this count, but note that the Plaintiffs have, in fact, met their pleading burden with respect to specific contract violations, as noted above.

Similarly, the Court will dismiss Count IX(k), "failing to provide student loans to qualified borrowers." Again, Plaintiffs fail to point to any contractual provision that was actually violated. Instead, they repeat their allegations that certain terms were left out or should be interpreted differently, for which they ask to rely on extrinsic evidence. The parol evidence rule bars such a claim. *See Atlantic Pier Assocs.*, 647 F. Supp. 2d at 489.

Finally, the Court will also dismiss Count IX(m), the alleged failure to allow Plaintiffs to mitigate their damages. Both parties appear to argue that, to the extent that such a right exists, it exists as part of the 60-day notice provision. Accordingly, the Court will dismiss this Count as duplicative of Count IX(a).

To the extent that Plaintiffs can, with specificity, further allege what terms of the contract were violated by counts IX(j), IX(k) and IX(m), they may file a Second Amended Complaint accordingly.

## IV. CONCLUSION

For the above stated reasons, counts I, II, III, IV, V, VI, VII and VIII fail to state a claim as a matter of law, and are dismissed with prejudice. Counts IX(j), IX(k) and IX(m) and IX(l) are dismissed without prejudice to Plaintiffs' ability to re-plead. Counts IX(b)-(i) plausibly allege a cause of action, as outlined by this Memorandum.

An implementing Order follows.